**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JANETTE SANCHEZ,

            Plaintiff,

v.                                                          No. 2:15-CV-00765-MV/CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

            Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court upon Plaintiff Janette Sanchez's *Motion to Reverse and Remand for Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 21), filed April 28, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed August 1, 2016; and Plaintiff's *Reply in Support of Motion to Reverse or Remand Administrative Agency Decision* (the "Reply"), (Doc. 29), filed August 19, 2016. United States District Judge Martha Vazquez referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition fo the case. (Doc. 9).

Ms. Sanchez filed an application for disability insurance benefits and supplemental security income on October 29, 2009, alleging disability beginning June 1, 2008. (Administrative Record ("AR") 258-262). Both applications were initially denied on March 3, 2010, (AR 132-136)), and again upon reconsideration on June 17, 2010. (AR 139-142, 144-146). Ms. Sanchez filed a request for a hearing on October 6, 2010, (AR 148-49); a hearing occurred on May 30, 2012 before Administrative Law Judge ("ALJ")

Ann Farris. (AR 74-104). Ms. Sanchez and Mary Diane Weber, an impartial vocational expert ("VE"), testified at the hearing. (AR 74-104, 115). The ALJ issued an unfavorable decision on June 18, 2012, (AR 112-127), finding that Ms. Sanchez was not disabled under the Social Security Act from June 1, 2008 through the date of the decision. (122-123).

Ms. Sanchez filed an application for review by the Appeals Council. (AR 129). On April 23, 2013, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ. (AR 129). The Appeals Council instructed the ALJ to: (1) consider the opinion of the nontreating source; (2) "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations;" and (3) if needed, expand the record with supplemental evidence from a VE. (AR 129-130).

The ALJ held a second hearing on January 16, 2014, at which Ms. Sanchez, VE Weber, and Ms. Sanchez's boyfriend Robert Townsend testified. (AR 42-73). The ALJ again issued an unfavorable decision on February 12, 2014. (AR 23-41). Ms. Sanchez requested review by the Appeals Council on February 20, 2014, (AR 22), which was summarily denied, (AR 1-7), making the second decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Sanchez argues the ALJ committed reversible, legal error by: (1) failing to properly evaluate the medical opinion of Ms. Sanchez's treating physician and other physicians; (2) finding that Ms. Sanchez could perform past relevant work that did not

constitute substantial gainful employment; and (3) finding that Ms. Sanchez could perform a job that does not exist in significant numbers nationally. (Doc. 21 at 2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not apply the correct legal standard when evaluating the medical opinions of the physicians in the medical record, the Court **RECOMMENDS** that the Motion be **GRANTED** and the case be **REMANDED** to the Commissioner for further proceedings.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

## III.    Background

Ms. Sanchez alleged disability beginning June 1, 2008, because she is blind in her right eye, losing eyesight in her left eye, and suffers from post-traumatic stress disorder ("PTSD"), and anxiety. (AR 315).

At step one, the ALJ determined that Ms. Sanchez had not engaged in substantial gainful activity since her alleged onset of disability on June 1, 2008. (AR 29). At step two, the ALJ concluded that Ms. Sanchez was severely impaired by PTSD, blindness in her right eye, opioid dependence on suboxone, a depressive disorder not otherwise specified ("NOS"), and marijuana abuse. (AR 29).

At step three, the ALJ explained that she specifically considered whether Ms. Sanchez's impairments met or satisfied any of the listed impairments. (AR 29-30). She determined that none of Ms. Sanchez's impairments, solely or in combination, equaled one of the impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.(AR 29).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ proceeded to step four. First, she analyzed Ms. Sanchez's subjective complaint of her physical and psychological symptoms and the objective medical evidence in the record. (AR 31-34). The ALJ found that Ms. Sanchez's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 32). The ALJ discussed medical records from Health Care for the Homeless and Socorro Mental Health. (AR 32). The ALJ also considered the reports and opinions of Sally Bodensteiner, M.D., Paula Hughson, M.D., Roseanne Fuller, and Charles Mellon, M.D, discussing Ms. Sanchez's physical and mental impairments and limitations. (AR 32-34).

The ALJ ultimately found that Ms. Sanchez has the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations. (AR 31). The ALJ found that Ms. Sanchez does not have any depth perception or peripheral vision in the right eye. (AR 31). Additionally, the ALJ limited Ms. Sanchez to simple, repetitive tasks with no public contact, and only occasional and superficial contact with co-workers. (AR 31).

The ALJ then explained that Ms. Sanchez is capable of performing her past relevant work as a housekeeper and presser, as these jobs do not require her to perform work-related activities that are precluded by the RFC. (AR 34).

Although the ALJ found that Ms. Sanchez could perform her past relevant work, the ALJ proceeded to step five because she found that there are other jobs that exist in the national economy that Ms. Sanchez can perform. (AR 34). At step five, the ALJ noted that Ms. Sanchez was 36 years old on the alleged disability onset date, and therefore classified as a "younger individual" according to the Regulations. (AR 34). The

ALJ also determined that Ms. Sanchez has limited education and is able to communicate in English. (AR 34).

The VE testified at the hearing that an individual with Ms. Sanchez's same age, education, work experience, and RFC could perform the job of garment folder. (A35). After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 35).

The ALJ concluded that because Ms. Sanchez is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 35).

**IV.    Analysis**

Ms. Sanchez argues the ALJ committed reversible, legal error by: (1) failing to properly evaluate the medical opinion of Ms. Sanchez's treating physician and other physicians; (2) finding that Ms. Sanchez could perform past relevant work that did not constitute substantial gainful employment; and (3) finding that Ms. Sanchez could perform a job that does not exist in significant numbers nationally. (Doc. 21 at 2).

The Commissioner responds that the ALJ properly assessed all medical opinions in the record. (Doc. 25 at 1, 7-15). The Commissioner further argues that the ALJ properly found that Ms. Sanchez's past work as a housekeeper qualified as substantial gainful employment. (Doc. 25 at 1, 15-17).

A.    _Requirement to Weigh All Medical Opinions in the Record_

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. _See_ 20 C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Every

medical source opinion should be weighed by the ALJ in consideration of the following,

applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. §

416.927(c). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently

specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately

assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so

constitutes legal error. *See Kerwin v. Astrue*, No. 06-6343, 224 Fed. Appx. 880, 884

(10th Cir. Aug. 8, 2007) (unpublished).

### B.  *The ALJ's Analysis of Medical Opinions in the Record*

With regard to the opinion evidence in the record, the ALJ stated that she

"considered all opinion evidence in accordance with the requirements of 20 CFR §

404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 31). Ms. Sanchez argues

that the ALJ improperly weighed and considered the opinions of Dr. Hughson, Ms.

Fuller, and Dr. Bodensteiner.

#### 1. The ALJ's Analysis of Dr. Hughson's Opinion

Dr. Hughson performed a psychiatric consultative examination of Ms. Sanchez

on January 28, 2010. (AR 455-459). In the report, Dr. Hughson diagnosed Ms. Sanchez

with PTSD, chronic, severe; crack cocaine dependence in remission; and antisocial

personality disorder. (AR 458). She opined that Ms. Sanchez "has been able to hold

8

jobs and probably could be motivated to do the same within a well structured program of rehabilitation;" however, her "[p]rognosis is not very promising without some strong, external intervention, extensive support, and specialized treatment." (AR 458). Dr. Hughson found that Ms. Sanchez is mildly to moderately limited in her ability to carry out instructions; moderately limited in her ability to understand and remember detailed or complex instruction, attend and concentrate, and work without supervision; moderately to markedly limited in her ability to interact with co-workers, interact with supervisors, adapt to changes in the work place, and use public transportation or travel to unfamiliar places; and markedly limited in her ability to interact with the public. (AR 459). Dr. Hughson did not find Ms. Sanchez had any limits in her ability to understand and remember very short and simple instructions or be aware of normal hazards and react appropriately. (AR 459). Dr. Hughson gave Ms. Sanchez a Global Assessment of Functioning ("GAF") score of 48, indicating some serious symptoms and impairments.[2] (AR 458).

In her first opinion, the ALJ did not analyze Dr. Hughson's opinion, (*See* AR 115-123); consequently, the Appeals Council remanded the case back to the ALJ with specific directives. The Appeals Council instructed the ALJ to weigh Dr. Hughson's opinions concerning Ms Sanchez's "limitations in social functioning and in concentration, persistence, or pace;" and "Dr. Hughson's statements that [Ms. Sanchez] has very limited insight and approaches problems concretely" and Dr. Hughson's

---

2 "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). A GAF between 41 and 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007 (citing *Langley*, 373 F.3d at 1122 n.3). GAF scores between 41 and 50 suggest an inability to keep a job. *Id.*

statements regarding Ms. Sanchez's prognosis. (AR 129). On remand, the ALJ stated

that she gave Dr. Hughson's opinion significant weight in regard to Ms. Sanchez's

"functioning in the areas of concentration, persistence[,] and pace in social functioning."

(AR 33). In regard to Dr. Hughson's prognosis, the ALJ gave Dr. Hughson's opinion

"some weight but not substantial weight, because although she indicates a poor

prognosis with no psychiatric treatment[,] she does not mention what the prognosis

would be with psychiatric treatment and a supportive home environment." (AR 33). The

ALJ does not address or weigh Ms. Sanchez's GAF score.

It is well-settled that "[t]he ALJ may not pick and choose which aspects of an

uncontradicted medical opinion to believe, relying on only those parts favorable to a

finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)

(internal citations omitted). Here, the ALJ placed significant weight on some of Dr.

Hughson's opinions, but seems to have rejected other opinions. Indeed, the ALJ does

not discuss Ms. Sanchez's GAF score or account for all of her moderate limitations.

While Dr. Hughson found that Ms. Sanchez is mildly to moderately limited in her ability

to carry out instructions and moderately limited in her ability to attend and concentrate,

the RFC indicates that Ms. Sanchez can carry out "simple[,] repetitive tasks." (AR 31,

459). The ALJ does not address Dr. Hughson's findings that Ms. Sanchez is moderately

to markedly limited in her abilities to interact with supervisors, adapt to changes in the

workplace, or use public transportation or travel to unfamiliar places, which is error. (AR

459).

The Commissioner argues that the ALJ "reasonably assessed and adopted the

limitations" in Dr. Hughson's opinion. (Doc. 25 at 7). Specifically, the Commissioner

maintains that a restriction to simple, repetitive tasks accounts for Ms. Sanchez's limitations with regard to concentration, persistence, and pace. (*Id.* at 8-9). This argument is not persuasive.

"A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, No. 11-4173, 505 Fed. Appx. 763, 770 (10th Cir. Dec. 14, 2012) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). Although "'there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence in addressing that limitation might be dispensed with,'" that is not the case here. *Evans v. Colvin*, No. 15-1222, 640 Fed. Appx. 731, 738 (10th Cir. Jan. 29, 2016) (unpublished) (quoting *Wayland v. Chater*, D.C.No. CIV-93-958-S, 76 F.3d 394, at *2 (10th Cir. Feb. 7, 1996) (unpublished)). The ALJ did not tie her RFC finding that Ms. Sanchez is able to perform simple, repetitive tasks to any evidence in the record. Therefore, the Court cannot tell whether the ALJ's RFC accounted for Dr. Hughson's finding that Ms. Sanchez is moderately limited with regard to concentration, persistence, and pace.

The Commissioner makes a similar argument regarding Dr. Hughson's limitation on Ms. Sanchez's ability to carry out instructions. The Commissioner states that because Dr. Hughson found that Ms. Sanchez was not limited in understanding simple instructions, a restriction to simple work accounted for her mild to moderate limitation in carrying out instructions. (Doc. 25 at 9-10).

The Social Security Administration's Program Operations Manual Systems ("POMS") acknowledges that a moderate impairment supports the conclusion that an

individual's capacity to perform work is impaired. POMS DI 24510.063(2), *available at* https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063. In addition, the Tenth Circuit has recognized that moderate impairments may decrease a claimant's ability to perform work. *Bowers v. Astrue*, No. 07-5114, 271 Fed. Appx. 731, 733–34 (10th Cir. Mar. 26, 2008) (unpublished). Therefore, the ALJ's finding that Ms. Sanchez could perform simple, repetitive tasks does not account for any limitation, however slight, in her ability to carry out instructions.

Finally, the Commissioner acknowledges that the ALJ did not list Dr. Hughson's moderately to marked limitation in interacting with supervisors in the RFC. (Doc. 25 at 9). However, the Commissioner states that this limitation was listed in the ALJ's first decision and "it would appear to be a mere oversight that it was not listed in the second." (*Id.*). In the alternative, the Commissioner asks the Court to accept the ALJ's findings because at the first hearing, the VE testified that the job of a housekeeper "would only require occasional and superficial interaction with supervisors." (Doc. 25 at 9-10) (citing *Lane v. Colvin*, No. 15-1253, 643 Fed. Appx. 766, at *3 (10th Cir. Mar 29, 2016) (unpublished) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors . . . [at the] job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error.")). This argument is similarly unavailing.

The Appeals Council sent the case back to the ALJ after her first opinion because the ALJ erred in not appropriately analyzing Dr. Hughson's opinion. In her second opinion, the ALJ formed a new RFC; therefore, the Court will not look to the previous opinion or assume that the ALJ made a simple mistake in formulating the new RFC.

Thus, although the ALJ placed "significant weight" on Dr. Hughson's opinion, the RFC did not include all of Ms. Sanchez's moderate and marked limitations. The ALJ seems to have implicitly rejected these finding, and therefore inappropriately "'us[ed] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)). This selective application of Dr. Hughson's report without explanation is error and requires a remand in order for the ALJ to explain the evidentiary basis for her RFC determination. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). On further review, the ALJ should also reanalyze Dr. Hughson's prognosis of Ms. Sanchez's ability to work.

### 2. *The ALJ's Analysis of OT Fuller's Opinion*

Ms. Fuller is a registered/licensed occupational therapist ("OT") who provided a medical assessment of Ms. Sanchez. (AR 585-590). Ms. Fuller found that Ms. Sanchez should avoid performing a variety of duties; performing under stress; dealing with people; making judgments and decisions; attaining precise set limits, tolerances, and standards; influencing people in their opinions, attitudes, and judgments; and directing, controlling, or planning activities of others. (AR 589). Ms. Fuller noted that Ms. Sanchez has marked difficultness in maintaining social functioning and maintaining concentration, persistence, or pace, and had repeated episodes of decompensation. (AR 590). She checked boxes describing Ms. Sanchez's depressive syndrome as being characterized with anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or

retardation; decreased energy; feelings of guilt or worthlessness; thoughts of suicide; and hallucinations, delusions, or paranoid thinking. (AR 590).

The ALJ stated that she considered this evidence; however, she found that Ms. Fuller "is not an acceptable medical source as defined in the [SSRs] and is not qualified to make determinations regarding claimant's overall functioning." (AR 33). The ALJ "considered" Ms. Fuller's opinion, but gave "greater weight to the opinions of the State Agency mental and physical medical consultants, as they are more consistent with the objective signs and findings, the claimant's daily functioning[,] and the overall medical evidence as a whole." (AR 33).

Ms. Fuller is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(a)(1)–(5). "Acceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. *Id.* Rather, Ms. Fuller is an OT, or an "other" medical source, pursuant to 20 C.F.R. § 404.1513(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because '[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' Further, 'only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (citing SSR 06–03p, 2006 WL 2329939 at *2).

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). SSR 06-03p clarifies that the

factors to weigh medical opinions of acceptable medical sources "set out in 20 C.F.R.

§§ 404.1527(d) and 416.927(d) apply equally to 'all opinions from medical sources who

are not acceptable medical sources as well as from other [non-medical] sources.'" *Franz*

*v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (citing SSR 06-03p, 2006 WL 2329939,

at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors
> for weighing opinion evidence, an opinion from a medical source who is
> not an "acceptable medical source" may outweigh the opinion of an
> "acceptable medical source," including the medical opinion of a treating
> source. For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an "acceptable medical source" if
> he or she has seen the individual more often than the treating source and
> has provided better supporting evidence and a better explanation for his or
> her opinion.

*Franz*, 509 F.3d at 1302 (citing SSR 06-03p, 2006 WL 2329939 at *5). Adjudicators are

instructed to "explain the weight given to opinions from these 'other sources,' or

otherwise ensure that the discussion of the evidence in the determination or decision

allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case." *Franz*, 509 F.3d at 1302

(citing SSR 06-03p, 2006 WL 2329939 at *6).

Based on the ALJ's opinion, it is unclear to the Court the actual weight the ALJ

afforded Ms. Fuller's opinion and which parts of Ms. Fuller's opinion the ALJ relied on in

developing Ms. Sanchez's RFC. Because the ALJ did not discuss any of Ms. Fuller's

findings in the opinion, it is not clear to the Court that the ALJ evaluated Ms. Fuller's

opinion.

The Commissioner argues that the ALJ's decision makes clear that the ALJ

considered Ms. Fuller's opinion but gave it less weight because it was inconsistent with

other opinions in the record. (Doc. 25 at 14-15). The Commissioner cites to *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012) for the proposition that "the ALJ's decision is sufficient if it permits [the Court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164. The Commissioner maintains that the ALJ's discussion of Ms. Fuller's opinion was sufficient to show that she discounted it because it was unsupported. (Doc. 25 at 15). The Court finds this argument unpersuasive.

Except for dismissing the opinion, the ALJ does not discuss Ms. Fuller's findings and the ALJ does not describe how Ms. Fuller's opinion conflicts with the evidence in the record. The question here is not whether it was "reasonable" to reject Ms. Duke's opinion, as the Commissioner suggests, but whether the ALJ applied the correct legal standards in weighing the medical opinions in the record. Based on her opinion, the Court cannot determine if the ALJ followed the correct legal standard. Because the Court is remanding the case, the ALJ should re-evaluate and weigh Ms. Fuller's opinion.

### 3. The ALJ's Analysis of Dr. Bodensteiner's Opinion

Dr. Bodensteiner is Ms. Sanchez's treating physician. [3] She provided a Medical Assessment of Ms. Sanchez's ability to do work related activities. (AR 581-584). In regards to physical limitations, Dr. Bodensteiner found that Ms. Sanchez should be limited to occasionally lifting or carrying less than 20 pounds; frequently lifting or carrying less than 10 pounds; standing or walking for less than 2 hours in an 8 hour work day; must periodically alternate sitting and standing to relieve pain or discomfort; pushing and pulling limited in the lower extremities; and stated that non-physical work activities are affected by Ms. Sanchez's other symptoms. (AR 581).

---

[3] The parties do not dispute that Dr. Bordensteiner was Ms. Sanchez's treating physicians. (*See* Doc. 25 at 3).

Dr. Bodensteiner also made a mental assessment of Ms. Sanchez, in which she found that Ms. Sanchez is moderately limited in her ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions, understand and remember detailed instructions; maintain attention and concentration for extended periods of time; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. (AR 582-584). Dr. Bodensteiner found that Ms. Sanchez was markedly limited in her ability to maintain physical effort for long periods without a need to decrease activity or pace; or to rest intermittently; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; carry out detailed instructions; respond appropriately to changes in the work place; and travel to unfamiliar places or use public transportation.

In evaluating Dr. Bodensteiner's opinion, the ALJ stated that she considered it; however, "she is not a psychiatrist and a treating psychiatrist would be better qualified at determining a mental [RFC]. Further, Dr. Bodensteiner has provided no treatment records or progress notes to support the extreme limitations noted in her" opinion. (AR 33). The ALJ contends that Dr. Bodensteiner's treatment record show that Ms. Sanchez was doing well; therefore, the ALJ gave "greater weight to the opinions of the State Agency mental and physical medical consultants." (AR 33).

Generally, the ALJ will give more weight to the medical opinions of a claimant's treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding how much weight to give a treating source opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ must initially determine whether a treating physician's opinion is to be accorded "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Second, if the opinion is not accorded controlling weight, "the ALJ must make clear how much weight the opinion is being given. . .and give good reasons. . .for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300-01). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31 (citing *Langley*, 373 F.3d at 1120). Indeed, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Regulations]." *Langley*, 373 F.3d at 1119 (internal citations and quotations omitted); *see* discussion of deference factors *supra* p. 8.

Here, the ALJ did not complete the first step of the treating physician analysis. She did not decide whether the opinion should be given controlling weight; instead, she collapsed the two-step inquiry into one, stating that she gave other medical sources "greater weight." (AR 33). The Commissioner argues that "the ALJ's analysis sufficiently covers why the opinion was not given controlling [weight] and what weight the ALJ ultimately gave the opinion." (Doc. 25 at 11 (citing *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (declining to remand when "the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."))). Although the Court agrees that it does not have to remand on the basis that the ALJ did not explicitly state she was not giving Dr. Bodensteiner's opinion controlling weight, the Court is not persuaded that the ALJ's analysis was sufficient.

The ALJ ignored all of the physical limitations Dr. Bodensteiner assessed for Ms. Sanchez. (AR 581). The ALJ stated that she gave "greater weight to the opinion of the State Agency . . . physical medical consultants." (AR 33). When an ALJ determines that a treating physician's opinion is inconsistent with other medical evidence, the ALJ must "examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*, 365 F.3d at 1215 (quotation omitted). Indeed, "[t]he treating physician's opinion is given particular weight because of [her] 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal*, 331 F.3d at 762 (citing 20 C.F.R. § 416.927(d)(2)).

Here, the only other medical assessments the ALJ discusses are Ms. Fuller and Dr. Hughson's. (AR 32-33) However, Ms. Fuller's assessment supports Dr. Bordensteiner's, and Dr. Hughson's does not address physical limitations as she performed consultative psychiatric examination. In addition, the ALJ references State Agency physicians as supporting a finding of non-disability, but fails to discuss the substance of those assessments, or how they are inconsistent with Dr. Bordensteiner's opinion. The ALJ should support his finding by referencing the portions of the record with which Dr. Bordensteiner's opinion is allegedly inconsistent on remand. *Krauser*, 638 F.3d at 1331 (citing *Hamlin*, 365 F.3d at 1217) (stating that while it may be possible to assemble support for the ALJ's conclusion from parts of the record cited elsewhere in the decision, that is best left to the ALJ himself on remand).

Finally, the ALJ places less weight on Dr. Bordensteiner's opinion because she is a doctor and not a psychiatrist. (AR 33). However, Dr. Bordensteiner evaluated Ms. Sanchez every month, noted her anxiety, prescribed her Paxil and screened her for depression every few months. (*See* AR 498-506, 508-534, 540-542, 567-570, 609-611, 613-618, 629-656, 661-705, 709-749, 754-797). Dr. Bodensteiner's opinion was based on meeting with and treating Ms. Sanchez every month; therefore, the ALJ cannot dismiss Dr. Bordensteiner's opinion without further analysis and evidence from the record.

In sum, the ALJ's reasoning supporting her finding that Dr. Bordensteiner's opinion is not entitled to controlling weight is not sufficiently specific or clear to allow this Court to meaningfully review the decision. As a result, this case should be remanded in

order for the ALJ to complete her analysis of Dr. Bordensteiner's decision and clarify her reasoning for not giving it controlling weight.

### C. *Ms. Sanchez's Request for Immediate Benefits*

Ms. Sanchez requests that the Court reverse the decision of the Commissioner and remand the case for an immediate award of disability benefits. (Doc. 29 at 11). The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, Ms. Sanchez's application for benefits has been pending since October 2009, which is a considerable amount of time. The Court is also mindful that this case has already been remanded to the ALJ once by the Appeals Council. However, the Court cannot say that there is substantial and uncontradicted evidence in the record that indicates Ms. Sanchez is disabled. *Hudman v. Astrue*, No. 1:08-cv-00643-RLP, at *17 (D.N.M. filed Apr. 16, 2009) (unpublished). Additionally, the Court is not convinced that a "remand would be an exercise in futility," because the ALJ can reweigh the opinions in the record and provide evidence for her conclusions. *Hamby v. Astrue*, No. 07-5051, 260 Fed. Appx. 108, 113 (10th Cir. Jan. 7, 2008).

For these reasons, the facts of this case do not necessitate an immediate award of benefits. The Court therefore orders that Ms. Sanchez's request for an immediate award of benefits be denied.

**V.      Conclusion**

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions in the record. On remand, the ALJ should properly weigh all medical opinions in the record. The Court does not decide any other issue raised by Ms. Sanchez, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Motion to Reverse and Remand for Rehearing with Supporting Memorandum*, (Doc. 21), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE